UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| S.C. )<br>)<br>   Plaintiff )<br>)<br>v. )<br>)<br>CORRECTIONS OFFICER HARRIMAN, and )<br>KEVIN JOYCE, Sheriff of Cumberland County, )<br>And CUMBERLAND COUNTY )<br>)<br>)<br>   Defendants ) | **Docket No. 2:19-cv-00063-LEW** |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, by and through undersigned counsel, in the above-entitled matter and states as follows:

**Nature of Action**

When Cumberland County Jail Officer Harriman believed inmate S.C. had exercised his First Amendment right to complain about him, he retaliated and engaged in vengeful conduct designed to cause serious emotional and physical harm. S.C. was a pre-trial detainee/prisoner held at Cumberland County Jail. Officer Harriman and S.C. had had a verbal confrontation regarding jail rules in which Officer Harriman used the "n" word (S.C. is a person of color) and yelled. Shortly thereafter, S.C. asked to make a phone call to Portland detective Cheryl Holmes. Harriman assumed S.C. was making a complaint about Harriman, and decided to disclose to four inmates that S.C. was working with federal prosecutors as a "snitch." As a direct, foreseeable, and intended result of these disclosures, another inmate confronted S.C., called him a "fucking rat" and attacked him, causing physical injuries and emotional distress. This was precisely the

1

denouement Harriman anticipated and hoped for. Harriman's conduct was animated by malice and bad faith and violates S.C.'s right to safety in prison.

## Parties

1. Plaintiff ("S.C.") is a resident of Brooklyn, New York.
2. Defendant County of Cumberland is a municipal corporation in the State of Maine.
3. Defendant Kevin Joyce ("Joyce") was the acting Sheriff of Cumberland County during all relevant times.
4. Defendant Corrections Officer Harriman ("Harriman") was, at all times pertinent to this complaint, a Cumberland County Corrections Officer, working at Cumberland County Jail ("CCJ" or "Jail").

## Subject Matter Jurisdiction

5. This action arises under the United States Constitution, particularly under the provisions of the 1st, 4th, 8th and 14th Amendments to the Constitution of the United States, and under Federal Law, particularly the Civil Rights Act, 42 U.S.C. § 1983.
6. This Court has jurisdiction of this cause under and by virtue of 28 U.S.C. § 1343 and 28 U.S.C. § 1331.
7. This Honorable Court may exercise pendent jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

## Personal Jurisdiction

8. This Honorable Court wields jurisdiction over each of the Defendants named herein pursuant to 14 M.R.S.A. §704-A in that each of the Defendants is domiciled in the State of Maine.

## Venue

9. Venue is properly laid before this Honorable Court pursuant to 28 U.S.C. § 1391 and Rule 9(a) of the rules of the United States District Court for the District of Maine in that all of the acts complained of occurred in the southern half of the State of Maine.

## Common Nucleus of Operative Fact

10. On or about May 17, 2017, S.C. was arrested on a criminal charge.

11. While he awaited trial on his new charge, as a pretrial detainee, he was housed at Cumberland County Jail.

12. In June of 2017 S.C. was housed in pod B3 of CCJ.

13. At that same time, Defendant Harriman was posted to pod B3.

14. Sometime in June, 2017, Defendant Harriman and S.C. became involved in a verbal confrontation.

15. At that time, Defendant Harriman claimed that S.C. was violating prison rules by having two mattresses in his cell.

16. During the verbal confrontation, Defendant Harriman yelled at S.C. and specifically used the "n" word several times.

17. S.C. is a person of color.

18. Shortly after this confrontation, S.C. informed Defendant Harriman that he wished to place a confidential call to Portland Police Detective Cheryl Holmes.

19. In addition to being a police detective, Ms. Holmes also served as a personal investigator at the CCJ.

20. On information and belief, after S.C. had made his phone call, Defendant Harriman confronted detective Holmes and inquired about whether S.C. had in fact called her.

21. On information and belief, Defendant Harriman formed the belief that S.C. called detective Holmes in order to lodge a complaint against him for his conduct in the verbal confrontation.

22. Several days after Defendant Harriman confirmed that S.C. in fact called detective Holmes, he disclosed to four different inmates in Pod B3 that S.C. was "a CI [confidential informant] working with the federal government."

23. Defendant Harriman made these disclosures of S.C.' status as a confidential informant as retaliation for S.C.' speaking to Cheryl Holmes about – in his mind – complaints S.C. had regarding Defendant Harriman.

24. Defendant Harriman made these disclosures of S.C.' status as a confidential informant specifically so that S.C. would be threatened or harmed by other inmates.

25. Defendant Harriman expected and intended for his disclosures regarding S.C.' status as a confidential informant to produce harm and fear in S.C..

26. Defendant Harriman was deliberately indifferent to the substantial risks of harm his disclosures to other inmates regarding S.C.' alleged status as a confidential informant would cause him.

27. Upon information and belief, Defendant Harriman gave no consideration to the risk that his "outing" a confidential informant could jeopardize an ongoing criminal investigation by motivating a witness to cease cooperating and/or could chill other inmates from cooperating with state or federal prosecutors in the future.

28. It did not take very long for the disclosures Defendant Harriman made to become known to many of the other inmates.

29. When S.C. realized that Defendant Harriman had disclosed his alleged status as a confidential informant, he informed detective Cheryl Holmes.

30. On information and belief, detective Cheryl Holmes conducted an investigation into S.C.' claims that Defendant Harriman had disclosed to CCJ inmates S.C.' alleged status as a confidential informant.

31. On information and belief, detective Holmes obtained written statements from each of the four inmates in Pod B3 to whom S.C. learned Defendant Harriman had made disclosures.

32. On information and belief, Lt. Barnes of the Internal Affairs Division of the Cumberland County Sheriff's Office re-interviewed the same inmates and they each corroborated their previous testimony.

33. On information and belief, S.C.' claims about Defendant Harriman's disclosures were substantiated by the Internal Affairs Department and Defendant Harriman was disciplined for his conduct.

34. On August 13, 2017 in Pod B3, S.C. was assaulted by another inmate, John McLean.

35. S.C. sustained injuries to his face that continued to cause pain and discomfort for months.

36. S.C. also was tased by Sergeant Diffin during the fight.

37. Just prior to launching his attack on S.C., Mr. McLean said, "you fucking rat!"

38. Accordingly, Mr. McLean's attack on S.C. was directly caused by the disclosures Defendant Harriman made.

39. Plaintiff demands a trial by jury.

### Count I: 42 U.S.C. §1983 Violation v. Officer Defendant Harriman

40. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

41. As indicated above, Defendant Harriman, under color of state law, violated S.C.' fundamental and/or constitutional rights, specifically: (1) he retaliated against S.C. for exercising his First Amendment rights, (2) he was deliberately indifferent to the substantial danger he placed S.C. in by disclosing his status as a cooperating witness, in violation of the 8th and 14th Amendments, (3) he violated S.C.' substantive and procedural due process rights, (4) he intentionally inflicted severe emotional distress upon S.C., (5) he violated S.C.' 4th Amendment rights to privacy, (6) he inflicted punishment against a pre-trial detainee without any due process whatsoever, (7) he acted with malice and bad faith in causing emotional and physical harm to S.C..

42. Defendants' actions displayed a reckless or callous disregard of, or indifference to, the rights of S.C..

WHEREFORE, S.C. requests that this Honorable Court (1) enter judgment for Plaintiff in an amount that fully and completely compensates him for the injuries he has sustained, (2) award S.C. punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1983, and (3) award such other and further relief as this Honorable Court deems just and proper.

**Count II: 42 U.S.C. §1983 Supervisory Violation v. Defendant Kevin Joyce**

43. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

44. Upon information and belief, Defendant Officer Harriman has been involved in other situations that have led to complaints being lodged about his inappropriate and/or unlawful or unconstitutional conduct.

45. Upon information and belief, Defendant Officer Harriman has been disciplined or should have been disciplined numerous times for his inappropriate conduct.

46. Upon information and belief, Defendant Joyce knew or should have known that Defendant Officer Harriman had a reputation for inappropriate/unlawful conduct.

47. Upon information and belief, Defendant Joyce did not take reasonable steps to supervise or discipline Defendant Officer Harriman or to minimize the risk of harm that Defendant Officer Harriman presented to the public.

**48.** Upon information and belief, any reasonably well-trained supervisor would have recognized that Defendant Officer Harriman, if not properly disciplined and supervised, would cause harm to the public.

49. Defendant Joyce's conduct or inaction in supervising and/or disciplining the Defendant Officer Harriman amounts to either deliberate, reckless or callous indifference to the constitutional rights of others, including S.C..

50. On information and belief, Defendant Joyce also failed to promulgate appropriate policies regarding disclosing confidential information to inmates about another inmate's status as a cooperating witness.

51. An affirmative link exists between the street level constitutional violations perpetrated by Defendant Officer Harriman and Defendant Joyce's failure to a) properly supervise and/or discipline Officer Harriman and/or b) promulgate appropriate policies regarding disclosing confidential information to inmates about another inmate's status as a cooperating witness.

52. Defendant Joyce's actions displayed a reckless or callous disregard of, or indifference to, the rights of S.C..

WHEREFORE, Plaintiff S.C. requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates him for the injuries he has

sustained, (2) award S.C. punitive damages, attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

### Count III: 42 U.S.C. §1983 Municipal Violation v. Cumberland County

53. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.

54. The customs or policies of Cumberland County comprise the cause of and the moving force behind the constitutional violations chronicled in this Complaint.

55. At all relevant times, Defendant Joyce was acting Cumberland County Sheriff.

56. At all relevant times Defendant Joyce was a policymaker within the Cumberland County hierarchy.

57. At all relevant times, on information and belief, Defendant Joyce, as a policymaker for Cumberland County, adopted a custom or policy of abdicating any appropriate level of supervision and/or discipline of Defendant Officer Harriman.

58. At all relevant times, on information and belief, Defendant Joyce, as a policymaker for Cumberland County, adopted a custom or policy of permitting his officers to disclose confidential information to inmates about another inmate's status as a cooperating witness.

59. This *laissez faire* approach to disclosing confidential information to inmates about another inmate's status as a cooperating witness amounts to an unconstitutional custom or policy.

60. It was or should have been eminently foreseeable to Defendant Joyce that allowing his officers to disclose confidential information to inmates about another inmate's status as a cooperating witness would inevitably result in the violation of citizens' civil rights, as happened in the instant case.

61. Defendant Cumberland County's actions displayed a reckless or callous disregard of, or indifference to, the rights of S.C..

WHEREFORE, Plaintiff S.C. requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates him for the injuries he has sustained, (2) award S.C. attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

### Count IV: IIED v. Defendant Harriman

62. Plaintiff repeats and realleges the allegations contained in the previous paragraphs.
63. The actions taken by Defendant Officer Harriman comprise the tort of intentional infliction of emotional distress against S.C..
64. Defendant Harriman intentionally inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct.
65. Defendant Harriman's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.
66. Defendant Harriman's actions caused S.C. emotional distress.
67. The emotional distress suffered by S.C. was so severe that no reasonable person could be expected to endure it.
68. Defendant Harriman's behavior was taken in bad faith.
69. Defendant Harriman's behavior was malicious or impliedly malicious.

WHEREFORE, Plaintiff S.C. requests that this Honorable Court (1) enter Plaintiff judgment in an amount that fully and completely compensates him for the injuries he has

sustained, (2) award S.C. punitive damages, attorney's fees and costs, and (3) award such other and further relief as this Honorable Court deems just and proper.

Dated: 02/12/2019                                       /s/ Michael J. Waxman
                                                        Attorney for Plaintiff
                                                        S.C.